MILLAUDON *vs.* CAJUS.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF NEW-ORLEANS.

The 1172d article of the *Louisiana Code,* does not apply to the case of an executor who seeks to distribute the net proceeds of an estate among the heirs. In that case the persons concerned are not to be cited in the manner prescribed in that article, which is restricted to cases in which nothing is sought but the sanction of the Court of Probates to the payment of creditors.

The case of an executor called to account by the heirs, has no bearing on that of an executor who seeks to distribute the net proceeds of an estate among the heirs.

The presence of a party at and his subscribing the inventory, cannot authorise the executor to consider him as constantly in court and bound to take notice of any account which the executor may subsequently file, so as to be precluded from contesting any part of it, unless a written opposition be filed within three days.

A party against whom judgment is given, cannot, when he does not appeal, avail himself of its reversal on the appeal of a party joined with him in the inferior court.

Henrietta Roche, widow of the late Arnaud Magnon, died on the 5th of February, 1833, and by her will, executed on the 25th of January, 1821, she appointed as her executors her said husband and Jean Baptiste Cajus.

Arnaud Magnon died on the 4th of December, 1821, having by his will appointed his wife as his executrix, who declined the trust, and Jean Baptiste Cajus, who accepted it, and received letters testamentary accordingly.

The will of the widow was admitted to probate, and Cajus recognised as the executor of the estates of Mr. and Mrs. Magnon.

On the 7th August, 1833, Cajus presented his petition, showing that he had fully administered the joint and several estates of the decedents, filing the account of his administration, averring his readiness to produce the proper vouchers when required, and partitioning the property of both estates according to the respective wills. He prayed for the approval and homologation of the account, for the payment to the heirs and legatees of the sums respectively due them as therein stated, and for his discharge as executor.

The judge, on the same day, ordered the creditors of the estates and all others interested, to show cause within ten days why the account filed should not be homologated, and the executor discharged from his trust.

On the 19th of the same month, on motion of the executor's counsel, and on giving the court to understand that no opposition to the account had been made, though regularly advertised by the Register of Wills, during ten days and more, and with the consent of the attorney for the absent heirs of the widow Magnon, the judge *a quo* ordered the homologation of the account, and payment to be made in conformity therewith. This judgment was signed on the 31st of the same month.

Laurent Millaudon filed an opposition to the account, stating that he was the transferee and purchaser of the rights of Margueritte Magnon and Miss Lastrade, as legatees of the late Arnaud Magnon. He opposed the homologation of the account on the ground of overcharge of commissions; of improperly charging him, as said transferee, with a portion of the fee of the counsel of the executor of widow Magnon; and with expenses of the inventory of her succession; and with certain other items of charge. He averred the account to be illegal as to the item of the funeral expenses, it being

in gross; as to the charge of rents for the same reason. He prayed its amendment in the several particulars of which he complained.

On the 20th of the same month, the opponent obtained a rule *nisi*, the executor to set aside the judgment homologating the account, on the grounds that the requirements of the law had not been complied with.

On the return day, the thirty-first of the same month, the judge discharged the rule, and set aside the opposition which had been filed without leave on the 19th of the same month, after the adjournment of the court.

Millaudon appealed.

*Macready*, for appellant, contended as follows:

The judgment ought to be annulled, because Millaudon being the owner of one half of the succession of Magnon, as purchased from two of Magnon's heirs, ought to have been personally cited to show cause why the tableau should not be homologated and judgment rendered thereon. He was not cited, *Code of Practice*, 606, 609, and judgment was rendered against him. The case of Merchand *vs.* Garcia, 4th *Louisiana Reports*, 300, refers to the proceedings to be conducted under 1000 and 1004, when the the heirs cite the executor to render his account, they are then all in court. This case is clearly distinguishable from that where the account is rendered without the knowledge of the heir.

*D. Seghers, contra.*

MARTIN, J., delivered the opinion of the court.

Millaudon, the assignee of the shares of two of the heirs, is appellant from the decree which homologates a tableau of distribution of the property of these two estates, by Cajus, who was executor for both.

The defendant claims a reversal of the decree, on a suggestion that it was rendered without his having been cited or notified, and that it is contrary to law and evidence.

The counsel of the executor has replied that the appellant was a party to the proceedings of the Court of Probates, on the estates, having been present and having subscribed the inventories; that the usual advertisements of publications, notifying all persons concerned, were made in the gazettes; that the appellant ought to have filed his opposition to the table au, if he had any, within three days and in writing; that he filed an opposition after the adjournment of the court, on the day the deed was rendered, and obtained a rule to show cause on the executor, which rule was afterwards discharged. He has relied on the *Louisiana Code*, 1172 and 4. *Louisiana Reports*, 300.

The appellant's counsel has relied on the *Code of Practice*, 606, 9.

These articles of the *Code of Practice*, are relied on to establish the rights of the party, enforced by a judgment rendered without his having been cited to have it annulled or reversed.

The article of the *Louisiana Code*, cited by the appellee's counsel, authorises indeed the executor who desires the authority of the Court of Probates to pay creditors, to call *all persons concerned*, to appear and file their opposition. This may likely prevent an heir who has neglected to oppose payments to creditors, to contest their legality; but the article has no application to the case of an executor who seeks to distribute the net proceeds of an estate among the heirs; this must be done *vocatis vocandis*, and the persons concerned are not to be cited in the mode prescribed by the article 1172, which must be restricted to cases in which nothing is sought but the sanction of the court to the payment of creditors.

The case in 4 *Louisiana Reports*, is that of an executor called to account by the heirs. It decides that when the account is filed, the heirs must state their opposition in writing within a fixed period. This case has no bearing on the present.

The presence of the appellant at, and his subscribing the inventory, cannot authorise the executor to consider him as

EASTERN DIS.
*March*, 1834.

MILLAUDON
*vs.*
CAJUS.

The 1172d art. of the *Louisiana Code*, does not apply to the case of an executor who seeks to distribute the net proceeds of an estate among the heirs. In that case the persons concerned are not to be cited in the manner prescribed in that article, which is restricted to cases in which nothing is sought but the sanction of the court of probates to the payment of creditors.

The case of an executor called to account by the heirs has no bearing on that of an executor who seeks to distribute the net proceeds of an estate among the heirs.

EASTERN DIS.  constantly in court, and bound to take notice of any account,
*March*, 1834.
⸻⸻⸻  the executor may file at any subsequent period, so as to be
MILLAUDON    precluded from consulting any part of it, unless a written
*vs.*
CAJUS.       opposition be filed within three days.

The presence of
a party at and      The rule obtained by the appellant, with the view of
subscribing the
inventory, cannot affecting the decree of the Court of Probates, and the dis-
authorise the ex-
ecutor to consider charge of that rule, cannot have the effect of curing so
him as constantly
in court, and palpable a defect in the decree, as that of having been
bound to take no-
tice of any ac- rendered against a party sought to be bound thereby,
count which the
executor may *without his having been legally cited or notified.*
subsequently file,
so as to be pre-      It is therefore ordered, adjudged, and decreed, that the
cluded from con-
testing any part judgment of the court of probates be annulled, avoided and
of it, unless a
written opposi- reversed, at the costs of the appellee.
tion be filed with-
in three days.

D. *Seghers*, for appellee moved for a re-hearing on the
following grounds:

All objections to accounts of executors must be made in
writing, within three days after the account is filed. 4th
*Louisiana Reports*, 300. *Marchand* vs. *Cavelier*.

1. The suggestions made by the appellant that the judg-
ment of the inferior court was rendered without his having
been cited, comes too late. It was made, for the first time,
on the very day of trial before the Supreme Court, viz. on the
21st January, 1834. The points containing this strange
allegation, were filed on that day without their having ever
been communicated to us, so that we were left entirely in
the dark, and taken on purpose by surprise, as to the plea on
which the appellee intended to rely. This plea ought to
have been specially set out at length in the inferior court.

2. The opinion manifested by this court with regard to
*personal notice*, is contrary to the universal course followed
throughout the state on this particular point. The general
impression has been that the duties and powers of executors,
curators of vacant estates, and administrators were the same,
and that those parts of the Code which had relation to the
former, had also a bearing on the latter. Thus, we see by
article 1042 of the *Louisiana Code*, that administrators have

the same powers, and are subject to the same duties and responsibilities as the curators of vacant estates; and by article 1663, that executors must proceed to the sales and to the payment of the debts in the manner prescribed for curators of vacant estates. Now, if article 1172 was to be explained by itself alone, it might, perhaps, be understood as applying exclusively to creditors; but it must be taken in conjunction with article 1057, whereby legatees are placed on the same footing with creditors. The notice there required to be given, (in the French text, *avis*), is not a personal notice, *but a public advertisement in the newspapers*. Such has been the construction given to that article, 1057, by universal practice, and it appears to be founded on law.

3. The court have annulled the judgment of the inferior tribunal in all its parts, though it never should have been reversed, in any case, except only as far as Millaudon may be concerned. The estates are nearly settled, all the creditors have been paid, and all the heirs and legatees, except Millaudon, have received their shares. What a 'confusion would it not create if the decree was not amended in that respect! Should the court, therefore, persist in this opinion, that the decision of the judge below is erroneous, still his judgment ought not to be disturbed, except as relates to Millaudon; and even then, with directions to the inferior judge, to disregard all that part of Millaudon's opposition concerning payments made to creditors. This is in strict accordance with the. doctrine laid down by this honourable court, in the very opinion of which we now complain. " This article, 1172," says this court, "*prevents* an heir who has neglected to oppose payments to creditors, *to contest their legality.*"

*Macready, contra.*

The opinion of the court overruling the motion, was delivered by MARTIN, J.

We have been requested to grant a re-hearing, (among other grounds) because the judgment of the lower court is reversed absolutely, while it ought to have been so as to the

EASTERN DIS.
*March*, 1834.

appellant; all the parties against whom it was given, not having appealed; and, because, in remanding the case for further proceedings, we have not instructed the judge not to suffer the payments authorised by the homologation, to be contested.

It is so clear a point that a party against whom judgment is given, cannot avail himself when he does not appeal, of its reversal on the appeal of a party joined with him below, that it is absolutely unnecessary to qualify the reversal of the judgment.

In the reasonings which lead to the conclusions we came to, an heir who had neglected to appear on a. publication requiring *all persons concerned* to come and oppose if they saw fit, the leave prayed for by the executor to pay creditors, was concluded from contesting such judgment after the homologation. The opinions thus expressed, have no need, in our opinion, of being repeated at the end of the denial.

The re-hearing is, therefore, refused.