## Isaac Baldwin v. Henry Carleton.

An heir cannot be affected by any claim of an executor, unless personally cited to contest it.

A minor heir is not legally represented by his tutor, on an application for the homologation of the accounts of the executors, where the tutor, as one of the executors, claims, with his co-executor, a sum for commissions on the estate of the deceased. The minor should have been represented by his under-tutor, or the homologation of the accounts of the executors will not form *res judicata* as to him.

A minor is not bound to resort to an appeal or action of nullity, to protect himself against a judgment rendered against him when not legally represented. Such a judgment must be considered as one rendered without parties, and absolutely void.

Executors are jointly and severally responsible for the property committed to their charge. C. C. 1674.

In joint demands one of the creditors cannot represent the debtor.

Appeal from the Parish Court of New Orleans, *Maurian*, J. The plaintiff claims from the defendant $3,593 60. He represents that by the will of his mother, which was admitted to probate in the parish of Orleans on the 18th February, 1836, he was appointed her universal legatee, and Thomas H. Maddox

and Henry Carleton, the defendant, her testamentary executors; and that Maddox was also appointed his tutor, he being then a minor and his father dead. That the executors qualified and administered on the estate; that an inventory thereof was made, which embraced all the property in which his deceased mother was interested; and that nearly the whole of the property mentioned in the inventory belonged jointly to his mother and himself, having belonged to his father, who died on the 25th of April, 1833, and had bequeathed his property in equal shares to him and his mother. That Maddox and the defendant rendered an account of their administration, in which they credited themselves with two and a half per cent commissions, as executors, on the amount of the inventories made after the death of his mother, which embraced a large amount of property not belonging to the estate of his mother, thus claiming $14,374 38, when they were only entitled to one half of that sum, to wit, $7,187 19, and the defendant alone only to $3,593 60. That the account was homologated, so far as not opposed, and the sum of $14,-374 38 received by Maddox and Carleton. That on the 27th February, 1840, petitioner attained his majority, and on settling with Maddox, his tutor, ascertained that the executors had been over paid; and that Maddox, as soon as he was informed of the error, refunded the amount, but that the defendant refuses to pay back the sum of $3,593 60, wrongfully obtained by him.

The defendant pleaded that the commissions, for the recovery of which this action was instituted, were allowed by the Probate Court of the parish of Orleans, a court of competent jurisdiction, in a proceeding to which the legal representative of the plaintiff was a party, which judgment was confirmed by the Supreme Court.

The case turned on the question, whether the plaintiff was bound by the judgment of the Probate Court homologating the accounts of the executors, Maddox and Carleton, the plaintiff being represented by Maddox, his tutor. In these accounts the executors claimed, and by the judgment were allowed the sum of $14,374 38 for commissions, as alleged in the petition in this suit. There was a judgment below against the defendant for $3,593 60, from which he appealed.

*L. Janin,* for the plaintiff. Isaac Baldwin, the plaintiff's father, died in 1833, leaving a large estate, which descended, in equal shares, to his only child, the plaintiff, and to his widow in community. The widow died in 1836, leaving a will, by which she bequeathed her whole property, with the exception of one legacy, to the plaintiff, and appointed Thomas H. Maddox and the defendant her executors. She also designated Maddox as the testamentary tutor of the plaintiff, then a minor. Maddox, who is a resident of the parish of Rapides, managed the property of the estate, which, with the exception of some moveables, was all situated in that parish. The defendant, a member of the bar of New Orleans, conducted the legal proceedings of the estate, which had been opened in the parish of Orleans. These proceedings were of the simplest kind. Inventories of all the property were made, which had been left at the death of Baldwin. The inventories stated that it belonged in indivision to the estate of Mrs. Baldwin, and to the minor heir of Isaac Baldwin. Some time afterwards the executors filed an account in the Court of Probates. It was made out under the direction of the defendant, who signed the petition as attorney at law. In this account the defendant was credited with a fee of $7,500, for professional services rendered to the estate ; and the executors were credited with $14,374 38, as commissions, being on the whole property left at the decease of Baldwin, and not only on the half of it which belonged to the estate of Mrs. Baldwin. These were, therefore, double the commissions to which the executors were entitled. The usual advertisements were published, but before the delay expired, Maddox, as tutor and coexecutor, filed an opposition, stating that he had been misled by the defendant, under whose advice he had acted, and that he was now informed that the fee of $7,500 was not due to the defendant. This opposition was tried and carried up to the Supreme Court on appeal, and there the fee was entirely disallowed. During the trial of this opposition, the counsel for Maddox, the tutor and executor, was called upon to make and did make an admission upon record, that he did not contest the commission charged by Carleton, and amounting to $7,187 19.

Baldwin v. Carleton.

And it was also on his motion that the account had previously been confirmed, so far as not opposed.

In 1840, the plaintiff attained his majority. He had a settlement with his tutor, and then detected the overcharge. As soon as Maddox was informed of his error, he returned one half of the commissions he had received; and this suit was brought to recover the other half from the defendant. The defendant put in a plea to the jurisdiction of the Parish Court, and a plea of *res judicata*. Both were overruled by the Parish Court, and judgment given against him for the amount claimed, and he has appealed.

Under the decision in the case of *Millaudon* v. *Caius* (6 La. 224), and the laws upon which it is based, the homologation of an executor's account, after ten days' advertisement, is intended exclusively to settle the rank and privileges among the creditors of the estate, and is *res judicata* as to them only; but when the object of the executor is to settle with the heir, to pay over to him the balance in his hands, and to receive discharge, he must cite the heir personally. Here the heir was not cited, nor any one for him. The heir being a minor could not have been cited personally. His tutor should, therefore, have been cited. The tutor, under ordinary circumstances, is, no doubt, the only proper person, and has full power to give a discharge to the executors. But as, in this instance, the tutor was also one of the executors, it would have been absurd to cite himself—the plaintiff in homologation cannot be also the de-defendant in homologation—he who has to render an account cannot receive the account—he cannot discharge himself If such a nugatory attempt had been made, the court would have declared it a proceeding without parties. And if Maddox, the executor, could not have cited Maddox, the tutor, and if his appearance in answer to such a citation would have been illusory, it follows that his voluntary appearance can produce no greater effect. A stronger case of opposition of interest between the minor and the tutor cannot be imagined. It was, therefore, necessary to cite the under-tutor. Civil Code, art. 301. Code of Pract, art. 117. And as Henry Lockett, the under-tutor, had also

an adverse interest to the minor, an under-tutor, *ad hoc*, ought to have been specially appointed and cited.

It is contended that Maddox' interest was not opposed to that of the minor, because he was to receive no part of the excess of commissions charged and received by Carleton, and that his interest in the question of the right to claim such commissions was not sufficient to disqualify him.

It is not without due reflection that we submit, that this doctrine is contrary to law, and most dangerous in its consequences. It would be a sufficient answer that he who renders the account cannot receive it and discharge himself. We may add, that executors are bound jointly and severally; that, therefore, Maddox, as executor, was bound to make good to the minor what Carleton took without being entitled to it; that when the account was presented, the money had already been received, or rather retained, by Carleton, and that therefore Maddox had an undoubted direct pecuniary interest (if he had been guided by pecuniary interest only,) to prevent inquiry, to stifle the claim of the minor, and to procure a homologation binding upon the minor, and relieving himself and his co-executor from responsibility. Nay, how could a double commission be allowed to Carleton, without being at the same time allowed to Maddox ? Would Carleton, after having received double commissions himself, have acted in the interest of the estate confided to him, and refused them to Maddox ? The very interest in the question is sufficient to disqualify the tutor—it is an indirect but palpable one ; the law makes no distinction between the direct and indirect interest which incapacitates the tutor ; this distinction is of an abstruse, impracticable and over-refined character ; the interest is glaring, and no subtle reasoning can brush it away ; and it is not to such temptations that either the tutor or the minor are to be exposed.

If, in the former suit between the same parties, Carleton was not permitted to assume two characters, that of executor and of counsel to the executor, and to allow a compensation to himself, how much less can Maddox, the tutor, and Maddox, the executor, make a contract with one another—nay, do more, sustain a suit

with one another, and produce a judgment for one and against the other.

The errors in the account were the work of the defendant, under whose professional advice and direction Maddox acted. Suddenly informed of one of them, Maddox, then on the eve of returning home, employs counsel to arrest its effects, and, with this exception, to have the account homologated, for he believed it correct in all other respects. The counsel's attention was confined to the only matter for which he was employed. When the trial of the matter in contest came on, he discovered accidentally the double charge of commissions, and made some intelligible remarks upon it. Maddox was then in the parish of Rapides; the counsel could not, of his own accord, make a new opposition; it was too late for Maddox to do so, as on his motion the account had been homologated, and no means were left to the counsel to keep the matter in suspense.

We have already said that the account, and the error in it, were Carleton's work; it was only in relation to the claim for a fee that Maddox employed new counsel—he believed every thing else in the account correct: when he directed the account to be homologated, he still labored under the error produced by the defendant acting professionally. Carleton was the executor and legal adviser of the estate; indeed he did, and from his situation could, render no other but legal services in the settlement of the estate; and in Mrs. Baldwin's will, he was designated as the tutor of the minor, in case of the inability of Maddox. Carleton stood, therefore, in the most confidential relation possible to the heir, and had the duties of a friend, adviser and father to perform. The law makes a radical distinction between parties thus differently conditioned. This distinction pervades every system of jurisprudence. The greater the trust, and the greater the means for defrauding, the greater is the protection of the law. A person thus situated, is not permitted to screen himself behind legal cobwebs of his own weaving. But this would require developments for which this is not the place.

It is clear that the plaintiff has been defrauded. It is clear

that he has no remedy except against Carleton, who received, or rather took, what he was not entitled to. If the plaintiff had indeed, at any time, a remedy against Maddox, and Maddox sought to recover over against Carleton, Carleton would have answered him with the account and decree of homologation; that is, he would have defied, and thrown the loss upon his own innocent client, because the client had followed the advice given to him by Carleton.

It would be a disgrace to our jurisprudence if a fraud of so deep a die could go unpunished. It would bring deserved contempt and distrust upon the legal profession, if its members were ever permitted to prostitute the noble science of the law to the knitting of meshes, in which to catch their own clients, and others who rely on their professional knowledge and skill.

*R. Hunt* and *Micou*, for the appellant. It is contended that the tutor had an interest in the commissions, and, therefore, could not represent the minor. We reply, *first*, that he had no interest in the commissions to be received by his co-executor; and *secondly*, that even if interested, the judgment is binding upon the minor, until reversed or annulled.

*First.* Maddox acting as tutor—appearing as such, was certainly competent to represent the minor in all questions except those in which he had a direct, immediate, and adverse interest to him. He had no interest in the share of commissions to be received by his co-executor. He was not enriched by their allowance, nor would he have been impoverished by their refusal. On the contrary, under his double responsibility, as executor and as tutor, he had a direct interest in refusing an undue allowance, and the record shows with what zeal he performed his duty. The interest in the rate of commissions was not sufficient to disqualify him, and none other existed or can be imagined.

The question is, whether Maddox had such an interest in the commissions as disqualified him from opposing them at the time, on behalf of the minor? If he had no such disqualifying interest, and allowed them to be confirmed without opposition, the only question that could afterwards arise, would be between him and his ward when he came of age.

That Maddox's interest was not identical with Carleton's, will appear from this : Suppose Carleton had received his commissions, and resigned at the end of one year, on the executors rendering an account thus far. Suppose Maddox had continued to act alone, and had not claimed his commissions until he rendered his account in the second year. It is plain that the allowance made to Carleton could not avail Maddox, if his commissions were disputed. He would have an interest in the question only; that is, a hope that the allowance made to Carleton would aid him in obtaining his own. Whether such an interest disqualifies him from acting for the minor, is the only point that can now be raised.

The position of Maddox is like that of a witness called to testify in a cause where he has an interest in *the question* only. Such an interest does not disqualify a witness in any court in the world, though his testimony might be the basis of a judgment which he hoped might serve him in his own case. Even where one underwriter was sued, another underwriter to the same instrument was allowed to testify for the defendant.

Such, too, is the established course of decisions in Louisiana. See 3 Mart. N. S. 11, 275.

Suppose Maddox and a third person had each held a promissory note against the estate, both of same date and amount, and both had been prescribed before the death of the deceased, and these notes had been allowed by the homologation, could Baldwin, when of age, recover back the money from such third person, on the ground that Maddox was interested in the question of prescription ?

Several physicians attended the deceased while she was sick. Dr. Maddox was one. Their attendance was the same, services the same, the items of their accounts were the same, but all charged four fold more than the tariff fixed by law; yet Maddox admitted their correctness, as he did Carleton's, whereupon they were all homologated by the court. Could Baldwin, when of age, recover back from one of the other physicians the excess above what the law allowed, on the ground that Maddox was interested in the question ?

Executors and tutors often render long accounts, filled with

a multitude of items, whereby they may have, in the complicated transactions of life, an interest in many questions that arise. If, for that reason, the homologation could be attacked, few could withstand the assault. Some discovery may yet be made, some afterthought may still arise, and this very account of administration may become the source of other litigation, and the judgment of homologation be treated as a mere nullity.

The plaintiff's counsel is mistaken in supposing that Lockett was disqualified, by his interest, from appearing as under-tutor. His interest was limited to the fees for professional services; he had no interest in the commissions claimed by Carleton and Maddox.

Plaintiff's counsel says truly, that the executors were " severally and jointly bound" towards the minor.

If Maddox had an interest in swelling the commissions, he had, on the other hand, a direct interest in resisting Carleton's claim, for being bound *in solido*, he was responsible to Baldwin for every dollar that Carleton unduly received. The law binds them *in solido*, in order to sharpen their vigilance over the conduct of each other. On this point there is no difference of opinion; for, by an act on file in the records in this case, Baldwin, when he came of age, released Maddox from this very responsibility—that is, for any excess he may have permitted Carleton to receive. Here Baldwin gives up the very point in controversy. Maddox was responsible, and Baldwin releases that responsibility.

But this release being made long after the homologation of the account, cannot affect the competency of Maddox at the time. It cannot retroact and destroy a competency that was perfect in both his capacity as executor and tutor, at the time of the allowance.

*Second.* Even if the tutor had an adverse interest, the minor is bound by the judgment, until regularly reversed or annulled. The position, that whenever it can be made to appear that a tutor provoking a judgment had an adverse interest to the ward, such judgment at once becomes a *mere nullity*, is unsupported by reason or authority. The law intends that higher faith and

efficacy shall be given to the solemn judgments of its courts. The tutor may incur a liability to his ward, for the consequences of his error or his fraud ; but the judgment cannot be set aside, except in the modes prescribed by law.

These modes are by an action of nullity in the court which rendered the judgment, or by appeal. Whether the defect results from want of citation, error, or fraud, these remedies, and these alone, are permitted. That they are effective as well as proper remedies, the plaintiff can scarcely deny. He was relieved on his appeal from one item of this account, and if, while the appeal was pending, another item had been shown to be erroneous, he would have obtained similar relief from such further error. As this was not done, the judgment rendered and affirmed must stand. It cannot be attacked directly or collaterally in another court. Whether rendered against a party appearing in person or by an agent, the law makes no distinction as to the efficacy of the judgment. In either case it stands until annulled by the court which rendered it, or reversed on appeal. *Ita lex scripta*, and so has this court uniformly decided. Code of Pract. art. 606, &c. *Martin* v. *Martin*, 5 Mart. N. S. 151. *Lewis* v. *Lewis*, 5 La. 393. *Brent* v. *Cheevers*, 16 La. 25. *Ferrari* v. *Lambeth*, 11 La. 108. *Morgan & Co.* v. *Their Creditors*, 19 La. 85. *Broussard* v. *Bernard*, 7 La. 223. *Dunbar* v. *Thomas*, 14 La. 335. *Derbigny* v. *Pierce*, 18 La. 551. *Brosnaham* v. *Turner*, 16 La. 454. *Rhodes* v. *The Union Bank*, 7 Robinson.

But if this court, after having confirmed the judgment of the Probate Court, fixing the defendant's commissions, at the instance of the petitioner, through his counsel, Mr. Janin, were at liberty to disregard their own solemn judgment, to re-open the questions therein settled, and once more review the judgment of that court by which the commissions were originally fixed, the defendant would contend that the commissions were properly allowed.

Isaac Baldwin died in the year 1833, leaving a considerable estate.

His widow in community, sole executrix of his will and na-

tural tutrix of his only heir, Isaac Baldwin, then a minor, remained in possession of the entire estate. See the proceedings in the Probate Court.

A considerable portion of property belonging to the estate, to wit, a tract of land, &c., was subsequently adjudicated to her for $30,000 (See the inventory, &c.); but no other division or separation of the estate was ever made, nor were the rights of the minor in any manner ascertained.

The widow died in the year 1836.

After the death of her husband, she acquired property in her own right, and may have been possessed of other property before and during her marriage.

She died in possession of the entire estate of the minor heir and her own. Her executors succeeded to the possession of the entire property—not to that of an undivided interest in the property. They had seisin of the whole estate; they inventoried the whole, and were responsible for the whole. The provisions of our Code on the subject of executors' commissions, are founded on the just principle, that their commissions should be commensurate with their responsibility. This is the clear language of articles 1676 and 1677 of the Civil Code. If then the executors had seisin of the whole, they are entitled to commissions on the whole.

That the executors in this case succeeded to the charge of the whole property, is certain. The tutor of the minor was not even sworn until after the account was filed. Neither the inventories, nor any other proceedings before the court, can enable it to say what property belonged to the heir and what to the succession. The accidental circumstance of one person being the heir of both persons, superseded the necessity of separating the interests, but did not relieve the executors from any portion of their responsibility.

The defendant abstains from any further discussion of this point, because the matter cannot be examined and enquired into here. The decision, allowing the defendant his commissions, made on the motion of the tutor's attorney, Mr. Janin, and subsequently confirmed, at his instance, by this court, forms

a bar to the present action. It has the force of the thing ad-judged.

MARTIN, J.* The defendant and Thomas H. Maddox were executors of the mother of the plaintiff, a minor. Maddox was. besides his testamentary tutor; so was the defendant in case of the disability of Maddox. The executors, in. the inventory of their testatrix' succession, included not only her portion in her deceased husband's estate as common in goods with him, but also the balance of it, constituting the share of his son, the present plaintiff, and charged their commissions, which ought to have been confined to their testatrix's estate, on that and the portion of her husband's property which had descended to his son, the plaintiff. Their account was homologated, and this double commission received.

On the plaintiff's coming of age and settling with his tutor, this error was discovered, and instantly rectified as far as it related to the latter, by his reimbursing the excess in the commissions received. The present defendant, however, persisted in retaining all he had got, and this suit was brought to compel him to refund what he had illegally charged and retained.

The defendant did not pretend to justify the charge he had made, but endeavored to repel the plaintiff's claim by the plea of *res judicata*, founded on the homologation of the executors' account; and he is appellant from the decision of the first judge, overruling his plea on the ground that the heir cannot be affected by a claim of the executor, unless he be personally cited to contest it; and that the tutor being interested, and indeed the plaintiff in the judgment pleaded as *res judicata*, the under-tutor ought to have been brought in to defend the minor.

The defendant's counsel has urged that the judgment of the Court of Probates, homologating the account of the executors, must avail the defendant, until it be set aside by an action of nullity, or reversed on appeal: We think the Parish Court did not err in concluding, that the heir cannot be affected by a claim of

---

* The opinion in this case was delivered on a re-hearing. GARLAND, J., did not sit on the trial, being absent by leave of the court.

the executor, unless he be personally cited to contest it (6 La. 222), and we concur with it in the opinion that the minor was not legally represented in a case in which the executors, one of whom was his tutor, claimed a large sum of money from the estate of his mother, for the tutor could not be therein plaintiff, to put part of the estate in his pocket, and defendant, as protector of the minor's rights, to resist his own claim.

It is incorrect to say that every judgment forms *res judicata*, until attacked by an appeal or an action of nullity. In the case of *Pysché* v. *Paradol* (6 La. 377), we were of opinion that a minor was not bound to resort to an appeal, or action of nullity, in order to protect himself against a judgment homologating the account of an executor, on the ground that she had not been legally represented before the Court of Probates homologating it. She had indeed been represented by a curator *ad hoc*, and she was relieved, because she ought to have been so by a tutor. It is difficult to distinguish that case from the present, in which, the tutor being interested against his ward, the under-tutor ought to have taken his place. In the case of *Vignaud* v *Bernard* (1 Mart. N. S. 1), this court held, that a judgment rendered against a person legally incapacitated to defend himself, ought to be considered as one rendered without parties, and absolutely void.

Executors are jointly and severally accountable for the property subject to the executorship. Civil Code, art. 1674. When, therefore, Maddox and the defendant sought to relieve themselves from the responsibility they had incurred by the acceptance of the executorship, they were bound to render an account thereof to the Court of Probates, contradictorily with some person whose interest it was to inquire into the legality of their charges. They made one of upwards of $14,000 for their joint advantage. It would be absurd to say that one of them could legally admit one half of that charge, and contest the other. If it had been reduced, as it ought to have been, to one half, say $7,000, each executor would have retained $3,500. It is, therefore, clear that, with regard to that charge the minor was without protection, and the event has shown it. Maddox has acknowledged it, and honestly done justice to his ward. The

defendant, or his attorney, could not successfully contend that the charge was a just one. He must be presumed to have known that the under-tutor was the only proper person to contest it. He is a member of the profession. From the situation of the property of the succession and his distant residence therefrom, it is very probable that the testatrix relied on him to see justice done to her son. Was he ignorant that he asked, and retained the property of another? If he was, why, as soon as his co-executor discovered the error, of which the defendant ought to have warned him, did he not follow the example before him, and instantly disgorge what he unjustly retained?

It is unnecessary that we should examine whether, in the defendant's claim for professional services, his co-executor could have represented the minor. As to it, the tutor was without any interest; for he was jointly and severally liable with the defendant, his co-executor, for any part of the succession retained by the latter, unless on a claim perfectly distinct from any thing relating to the executorship, contradictorily examined, and finally allowed by the conrt. But, be that as it may, in joint demands one of the creditors cannot represent the debtor.

BULLARD, J., *dissenting.* I do not fully concur in the opinion pronounced by a majority of the court in this case. The only question is, upon the plea of *res judicata* set up by the defendant. It appears to me, that Maddox had not such an interest in the amount of commissions coming to his co-executor, as to render him incompetent to represent Baldwin as his tutor, as he assumed to do. Not only did he assume to act as tutor in that case, but his attorney at law moved for the homologation of the account, with the exception of the charge for professional services, and it was so homologated, and the judgment in that respect was affirmed in this court. Neither of them appear to have been sensible at that time, of the error as to the amount of commissions. It is clear that the judgment in question, so far as it concerns the professional services of Carleton, has the force of *res judicata,* because Maddox represented Baldwin as his tutor; so that, according to the doctrine settled by a majority of the court, a judgment may be partly conclusive and partly not,

if the person acting as tutor to one of the parties has an interest in the *question* though not in the *cause.* Such an interest in the question might render the tutor less vigilant, but it appears to me does not render him incompetent.

*Judgment affirmed.*